## Commonwealth v. Roberts

430

*Edward Peduzzi*, for plaintiff.

*Samuel G. Shahade* and *Eugene A. Creany*, for defendant.

McDONALD, J., February 2, 1957.—At a treasurer's sale of properties for delinquent taxes held on October 10, 1956, plaintiff bid the total of taxes, interests and costs accrued on the following three properties which had been advertised for sale and against which it had entered liens:

| Houses | Lots | Owner or Reputed Owner | Taxes and Interest |
|--------|------|------------------------|--------------------|
| 1 | 1 | Carrolltown Borough, M. P. Scholoto | $33.70 |
| 1 | 3 | Margaret Zollner | $22.46 |
| 1 | 2 | Johnstown, 12th Ward, Mildred Kerschner | $16.56 |

Plaintiff tendered payment in full of the amount of each bid. The Treasurer of Cambria County, defendant herein, refused to accept the tender unless an additional amount of 25 percent of each bid was paid as he believed required under provisions of section 10, Act of May 29, 1931, P. L. 280, amended by the Act of January 31, 1956, P. L. (1955) 968, 72 PS §5971(*j*). Plaintiff refused to make such additional payments.

A complaint in equity was filed by plaintiff, together with a petition, praying for a preliminary injunction to restrain the defendant from exposing the properties at an adjourned sale and further to compel him to accept the purchase price tendered and make, execute and deliver to plaintiff at the proper time deeds of conveyance for said properties. At a hearing on the

rule issued pursuant to the petition, defendant not objecting, the preliminary injunction was issued.

It was agreed by the parties that the averments of the complaint are the facts which raise as an issue the interpretation of the act and, therefore, no testimony was taken. This opinion and decree are filed after argument and consideration of the briefs.

Defendant contends he is required by provision of the act to charge an additional amount of 25 percent of the purchase price on each property sold at treasurer's sale. Plaintiff contends the act does not require such payment when the full amount of the purchase price is paid or complete settlement made in accordance with the acts of assembly relating to treasurer's sales.

The Act of January 31, 1956, P. L. 968, sec. 1, which amends section 10 of the above cited act of assembly, provides as follows:

"Payments by purchaser at sale; Purchase by county commissioners:

"It shall be the duty of the purchaser or purchasers at this treasurer's sale, as soon as the property is struck down, to pay (i) the amount of the purchase money, or (ii) such part thereof as may be necessary to pay all taxes, except such taxes as have heretofore been filed as liens in the office of the prothonotary, and all interest, and costs, and also one dollar and fifty cents for the use of the prothonotary for entering the report of the treasurer and acknowledgment of the treasurer's deed, as hereinafter mentioned, plus an additional amount equal to twenty-five per centum of the purchase money. In case said amount is not forthwith paid after the property is struck down, the sale shall be avoided and the property immediately put up again by the said treasurer. In the event the purchaser fails to later make complete settlement at the time and in the manner provided for in this act, any money paid under the provisions of this section shall be for-

feited and shall be disposed of the same as purchase money. . . ."

Defendant's interpretation of the above quoted section, on cursory examination, is a reasonable one. His action in requiring the additional charge was motivated by an exemplary attention to the public interest and a desire, no doubt, to avoid possible surcharge. In doing so, he should be commended for his diligence and, although we must resolve this issue against him, our decision should under no circumstances be construed as a condemnation of his action.

To understand the intent and purpose of this section, we first will review the mechanics of a treasurer's sale and the situations which commonly arise. After notice to the owner and advertisement, properties are exposed at public sale for delinquent taxes of one year, interest, proportionate costs of the sale and an additional $1.50 for the use of the prothonotary. If the total of this amount is not bid, the property must be purchased by the county commissioners.

Usually an interested party will open his bid in the amount of the taxes, interest and costs accrued. If no higher bid is received, the property is struck down to him at this purchase price. He is then required to immediately make payment to the treasurer of this amount. This is the situation in the case at bar.

The second situation which may arise, results from competitive bidding. The successful high bidder in such event is only required, under section 10, to make immediate payment of an amount equal to the taxes, interest and costs accrued pending "complete settlement". Settlement of the excess over the amount paid may be made by paying the balance, or as provided by section 13, Act of May 29, 1931, P. L. 280, as amended, filing a surplus purchase money bond in that amount. No advantage is gained by a purchaser

paying the balance at the time of sale or during the redemption period, so obviously the practice most commonly used is to file the surplus bond.

Defendant argues that this last mentioned situation is conducive to speculation. No doubt it is. Often properties are purchased with the purpose of later securing a return of an additional 15 percent from the property owner if and when he redeems. While this may have been an unanticipated use of the machinery of tax sales to procure an unusually high return on one's investment, it is by no means illegal. Perhaps too, this practice does impose an additional burden on one who suffers his property to be exposed to tax sale because of financial distress or other reasons. However, the law protects a property owner from a summary divestiture of title by reservation of the equity of redemption, or removal of the property from the public sale list prior to bidding, by payment of the taxes, interest, and costs accrued. We do not think it was the legislative purpose to penalize, or make less attractive the practice of speculation when by doing so, as in the case at bar, a creditor is also penalized in an endeavor to protect his debt by purchase of the security. We fail to see how this act will deter speculation. If in practice it would, and assuming arguendo defendant's contention is correct, it would in effect impose an additional burden on those purchasing at tax sale with a view to protecting a debt, or for other bona fide purposes.

As we analyze the purpose of this act, it was primarily intended to protect the public against additional expenses and not to protect a property owner against speculators. If it should make speculation at tax sales less attractive, that is incidental to the primary purpose. In the situation of competitive bidding, whether for speculation or otherwise, if settlement is not made by one of the methods hereinbefore discussed,

the treasurer is required to void the sale. When a purchaser defaults in settlement, he deprives a competitor-bidder from securing title to the property, replacing it on the tax rolls and incidentally paying the expenses of the sale. The county then must assume these expenses of time, effort and money. Therein, we believe, lies the "evil" which the legislature intended to correct by the act. As we view it, the additional payment, when settlement was not made at the sale, was intended to accomplish a salutary, two-fold effect: First, it would deter purchasers from defaulting in settlement; and second, if there was a default, the additional money would reimburse the county for expenses incident to voiding the sale.

With the above discussion in mind, we turn to an examination of the act. If a property is struck down on a bid of taxes, interest and costs (which at least must be bid, otherwise the property will be purchased by the county commissioners), that amount must be paid immediately. In such event, complete settlement of the purchase price has been made and the purchaser need do nothing more except receive the deed at the expiration of the redemption period. Thus subsection (*i*) of the act contemplates in this situation, payment of "the amount of the purchase money". Subsection (*ii*) of the act has no application and the additional payment of 25 percent therein set forth is not required. If it were, the latter portion of the act which states, "in the event the purchaser *fails to later make complete settlement* (italics supplied) at the time and in the manner provided for in this act, any money paid under the provisions of this section shall be forfeited . . .", is meaningless, because the purchaser having paid the entire purchase price cannot fail to later make complete settlement. He has already made that settlement.

Subsection 1 may also have application to a situation where the bid is in excess of the taxes, interest and costs but the full amount paid immediately. In such event, by the reasoning hereinbefore, settlement is complete, nothing remains to be done and the requirement of an additional payment of 25 percent under subsection (*ii*) of the act is not applicable.

However, if the bid is competitive and the successful bidder pays only the taxes, interest and costs, which is all that is required under subsection (*ii*) then complete settlement is deferred pending payment of the balance or filing of a surplus bond. In such event, before this settlement is made, and at the time of sale, the treasurer then must require payment of an additional 25 percent.

Therefore, the two subsections are mutually exclusive as indicated by the conjunction "or" used in the act to express a choice of procedure. In our interpretation, if the procedure under subsection (*ii*) is selected, then that portion of the subsection requiring an additional payment of 25 percent becomes operative.

Since, under the facts of this case, the full amount of the purchase money was tendered at the time of sale and the additional payment of 25 percent was not required, we make the following

### Decree

Now, February 2, 1957, at 11:50 a.m., in accordance with the foregoing opinion, Joseph P. Roberts, Treasurer of Cambria County, is hereby directed and ordered to accept the purchase money tendered by plaintiff on its bids for the properties described in the opinion and further, to make, execute and deliver to plaintiff at the time required by law, deeds of conveyance for said properties.

Costs of this proceeding shall be paid by Cambria County.